**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jesus Soto and Rosa Soto, | No. CIV-05-4105-PHX-MHM |
| Plaintiffs, | **ORDER** |
| v. | |
| Special Agent Eleazar M. Paredes and Senior Special Agent Carlos Archuleta of the U.S. Immigration and Customs Enforcement, an agency of the Department of Homeland Security, in their individual capacity, | |
| Defendants. | |

Plaintiffs Jesus and Rosa Soto, a married couple, brought an action against five special agents with the United States Immigration and Customs Enforcement agency. (Complaint, Dkt. #1). The Sotos complained that the agents had violated 28 U.S.C. § 1331 and the Fourth and Fifth Amendments of the United States Constitution. They alleged judicial deception in the procurement of a warrant used to search their home, as well as excessive force in the execution of that warrant. Three special agents were subsequently dismissed from the suit, (Order, Dkt. #41), and the remaining agents, Defendants Paredes and Archuleta, have moved for summary judgment on qualified immunity grounds. (First Motion for Summary Judgment, Dkt. #42).

I. Standard of Review

A motion for summary judgment may be granted only if the evidence shows "that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To defeat the motion, the non-moving party must show that there are genuine factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986). The party opposing summary judgment "may not rest upon the mere allegations or denials of [the party's] pleadings, but... must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e). See also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986). The Court must assume the nonmoving party's version of the facts to be correct, even in qualified immunity cases. Liston v. County of Riverside, 120 F.3d 965, 977 (9th Cir. 1997).

For a claim of judicial deception to survive summary judgment on qualified immunity grounds, the Plaintiff must: "1) make a 'substantial showing' of deliberate falsehood or reckless disregard for the truth and 2) establish that, but for the dishonesty, the challenged action would not have occurred." Id. at 973.

For the excessive force claim, the qualified immunity inquiry is the same as the inquiry made on the merits. Id. at 976. Although the reasonableness of force used ordinarily is a question of fact for the jury, defendants may be entitled to summary judgment if the "use of force was objectively reasonable under the circumstances." Id. n.10.

II. Background

On November 4, 2003, a shooting occurred on the I-10 freeway near Phoenix, Arizona. The local authorities believed that the vehicles involved were part of an organized alien smuggling ring. On November 24, 2003, Immigration and Customs Enforcement ("ICE") agents apprehended two individuals believed to have some involvement in the freeway shooting.

1    Defendant Paredes, a senior special agent with ICE, interviewed the apprehended
2 individuals, Ignacio Aramburo-Rodriguez and Celestino Velasquez-Blanca. Both individuals
3 separately admitted involvement in an alien smuggling ring known as the "Molina-Gastelum
4 Alien Smuggling Organization" and provided agent Paredes with some details regarding
5 payment they received for transporting smuggled immigrants from Mexico. Aramburo-
6 Rodriguez did not provide Paredes with any information regarding "drophouses"; Velasquez-
7 Blanca, however, informed agent Paredes that there were several drophouses used by the
8 organization in the Phoenix area. He indicated that he knew of one location, but did not
9 know the specific address.

10   Agent Paredes requested that Velasquez-Blanca draw a map to the location of the
11 drophouse. After obtaining the map, agent Paredes requested that an ICE agent go to the
12 house to take photographs and conduct surveillance. Agent Archuleta, the other remaining
13 Defendant in this case, sent agents DeKreek and Santiago to the house. He provided the
14 agents with oral instructions to the house, informing them that the house was a one-story,
15 white stucco house located around 73rd Avenue and Colter, and that it was the third house
16 from the corner.

17   Agents DeKreek and Santiago located the Plaintiffs' house at 7342 West Colter Street
18 in Glendale, Arizona. The agents observed the house for about an hour. During the
19 surveillance, the agents did not observe anyone entering or leaving the premises, and they
20 noted no suspicious activity. Agent Santiago took digital photographs of the house, which
21 he later left on the desk of a supervisor.

22   After agent Santiago returned from taking photographs of the Plaintiffs' home, agent
23 Paredes obtained one of the photographs and showed it to Velasquez-Blanca. Based on the
24 single photograph that he was shown, Velasquez-Blanca indicated that the house in the
25 picture was the drophouse to which he was referring.

26   Agent Paredes later drove out to the Plaintiffs' house himself, observing it for 45
27 minutes to an hour. He observed no suspicious activity. The following day, he applied for
28 a search warrant for the home, based on the hand-drawn map and the positive identification

made by Velasquez-Blanca. The warrant was granted, and no further surveillance on the house was conducted.

During the time frame in question, ICE agents were engaged in an operation tasked with investigating alleged drophouses in the Phoenix area. The agents involved conducted hundreds of investigations over a three-month period that included the investigation and search of the Plaintiffs' house. Surveillance during this period has been described as being conducted like an "assembly line." (Plaintiffs' Controverting and Separate Statement of Material Facts, Dkt. #47).

### III. Discussion

### A. Defendant Paredes's Motion for Summary Judgment

Defendant Paredes has moved for summary judgment on the grounds that he is entitled to qualified immunity from suit. This Court agrees. Qualified immunity protects agent Paredes from personal liability so long as his actions "could reasonably have been thought consistent with the rights [he is] alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224, 229 (1991) (internal citations and quotations omitted).

1. Judicial Deception

  a. Events Prior to Issuance of the Warrant

The Plaintiffs make several arguments that no competent law enforcement officer could have reasonably believed that there was probable cause to issue a search warrant for Plaintiffs' home. They suggest the following problems with the agents' conduct prior to the issuance of the warrant:

(1) Because Velasquez-Blanca had never been documented as a reliable informant, the information he provided should have been corroborated;

(2) The presence of additional drawings and notations on the hand-drawn map invalidated it;

  (3) It is unclear who wrote Velasquez-Blanca's statement (which is in English, when Velasquez-Blanca speaks only Spanish);

  (4) Agent Archuleta provided only oral directions to the agents assigned to photograph the house identified on the hand-drawn map;

  (5) Insufficient surveillance was conducted;

  (6) Showing the witness a single photo was overly suggestive and likely to lead to a misidentification; and

  (7) Agent Paredes failed to drive Velasquez-Blanca to the neighborhood to personally view and identify the alleged drophouse.

Although the Plaintiffs are correct in their belief that many or all of their suggestions may have increased the reliability of Velasquez-Blanca's identification of the house, the Court declines to find that the failure to take those steps amounts to "plain incompetence" or a "knowing violation" of the law. Hunter, 502 U.S. at 229.

The Court finds that agent Paredes was justified in relying on Velasquez-Blanca's statement. As set out in the Defendants' Motion, the tip provided by Velasquez-Blanca had the indicia of credibility because it was given in a face-to-face setting and constituted an admission against his penal interest. (Motion for Summary Judgment, Dkt. #42.) If Velasquez-Blanca hoped to receive a break for providing the information, there was no incentive for him to give the agents information that would not lead to an actual drophouse. Furthermore, the agents did in fact attempt to corroborate the tip by conducting some — albeit limited — surveillance, and by providing Velasquez-Blanca with a photograph of the house for him to positively identify.

The Plaintiffs have not indicated how the presence of the additional drawings and notations on the hand-drawn map serve to "further invalidate" the reliability of the map that it is uncontested that Velasquez-Blanca drew, and this Court can find no reason to speculate about the matter.

Similarly, the Plaintiffs take issue with the fact that Velasquez-Blanca's statement is in English. If the Plaintiffs mean to suggest that agent Paredes took certain liberties with the

information Velasquez-Blanca actually provided, or that there were issues with respect to the translation, they have not provided any evidence to that effect. The same analysis applies to the fact that Defendant Archuleta provided only oral directions to the Plaintiffs' house, and not a copy of the map. There is no evidence to support the contention that this amounted to plain incompetence or a knowing violation of the Plaintiffs' rights.

The next two contentions made by the Plaintiffs are more troublesome. That the agents conducted less than ideal surveillance of the Plaintiffs' house seems apparent. Additionally, the likelihood of a false positive in the identification of the house when shown a single photograph seems unsettlingly high. However, the Court cannot conclude that these failures by the agents were the result of plain incompetence or knowing violation of the law. As provided by the Plaintiffs in their own Controverting and Separate Statement of Facts, ICE agents were incredibly taxed by a shortage of resources while "engaged in hundreds of investigations of alleged drophouses in the Phoenix area over a three month period." (Dkt #47). Furthermore, the need for multiple photographs to ensure a reliable identification is much more salient in the context of identification of a human suspect, where the individual's liberty interests are potentially at stake. The Court cannot conclude that the agents' failures to take the additional steps suggested by the Plaintiffs meet the burden required by Hunter to void their qualified immunity.

Finally, the Plaintiffs fault the agents for failing to take Velasquez-Blanca to the neighborhood to personally identify the house. The Court agrees that taking such a step may have increased the reliability of the identification. The Court cannot agree, however, that the failure do so resulted in a violation of the Plaintiffs' rights under this claim of judicial deception. The Court finds the use of a single photograph of the Plaintiffs' house no more constitutionally problematic than "show-up" procedures that have been held not to violate criminal defendants' constitutional rights. A show-up involves bringing a criminal suspect to the scene of the crime shortly after its commission to determine whether eyewitnesses can identify him as a suspect. United States v. Kessler, 692 F.2d 584, 585 (9th Cir. 1982). The procedures for a show-up may be somewhat suggestive, as the witnesses are presented with

a single suspect, and the suspect may be handcuffed and surrounded by police. Id. at 586. The Ninth Circuit has held, however, that a show-up is not so "impermissively suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Id. Similarly, the Court finds that the procedures employed here did not violate the Plaintiffs' rights.

### b.  Obtaining the Warrant

The Plaintiffs argue that the Defendants' application for the search warrant constituted a violation of their clearly established constitutional rights. They argue that material omissions caused the Magistrate judge to act on incomplete and misleading information. Specifically, the Plaintiffs object that:

(1) The warrant affidavit omits the fact that Velasquez-Blanca never provided them with the actual address of the house (and that its wording is misleading such that the magistrate would believe that he did provide the address);

(2) The affidavit does not disclose that officers located the house based on Defendant Archuleta's oral directions (as opposed to viewing the map drawn by Velasquez-Blanca);

(3) The inclusion of the words "surveillance was conducted" falsely implies that surveillance further supported the issuance of the warrant; and

(4) Agent Paredes's description of the house to be searched differed from the actual appearance of the Plaintiffs' house.

The parties appear to agree on the governing standard to survive a motion for summary judgment on qualified immunity grounds: The Plaintiffs "must (1) make a 'substantial showing' of deliberate falsehood or reckless disregard for the truth and (2) establish that, but for the dishonesty, the challenged action would not have occurred." Butler v. Elle, 281 F.3d 1014 (9th Cir. 2002); Liston v. County of Riverside, 120 F.3d 965, 973 (9th Cir. 1997). Even accepting as true their allegations, the Court finds that the Plaintiffs have not met their burden to survive summary judgment on this ground. A plain reading of the affidavit does not reveal deliberate falsehood or reckless disregard for the truth, and in any

event, none of the alleged misstatements or omissions were material to the finding of probable cause.

The Plaintiffs claim that Defendant Paredes should have informed the Magistrate that Velasquez-Blanca did not provide them with the address of the drophouse. Furthermore, the language agent Paredes submitted may have misled the Magistrate into believing that Velasquez-Blanca <u>did</u> specify the street address. The offending language in the warrant application is as follows:

> In the interview conducted with Celestino VELAQUEZ-Blanca, VELAQUEZ was able to draw out a map to one of the "drophouses" which is located at 7342 W. Colter Street, Glendale, Arizona. Celestino VELAQUEZ-Blanca also informed ICE Agents that at 7342 W. Colter Street there is a 9mm pistol hidden in the kitchen that is utilized by the "drophouse" operator to guard smuggled/harbored aliens.

(Exhibit Application, Dkt. #47-1). The Court acknowledges that a constitutional violation can occur where the affiant intentionally or recklessly omits facts that are "required to prevent technically true statements in the affidavit from being misleading." <u>United States v. Stanert</u>, 762 F.2d 775, 781, <u>as amended</u>, 769 F.2d 1410, 1416 (1985). Although the language used by agent Paredes is unclear, and perhaps somewhat misleading, the Plaintiffs have failed to make a substantial showing, looking at the totality of the circumstances, that the language used was the result of either an intentional or reckless disregard for the truth.

The inclusion of the phrase "Velaquez [sic] was able to draw out a map to one of the 'drophouses'" logically implies that he did not also provide the agents with the street address. Had agent Paredes left out the information about the hand-drawn map, a stronger showing for reckless disregard would have been made. And although the second sentence — "Celestino VELAQUEZ-Blanca also <u>informed ICE Agents that at 7342 W. Colter Street</u> there is a 9mm pistol hidden in the kitchen — is more problematic, when read in conjunction with the immediately preceding sentence, it cannot not be said that the language constitutes an intentional or reckless disregard for the truth.

The Plaintiffs also complain that the affidavit did not specify that the agent who located and photographed the house received only oral directions to the house from agent

- 8 -

Archuleta, and did not view the map firsthand. The Court does not find this to be a material omission. Because the Plaintiffs' own statement of facts indicates that the agent was not familiar with Phoenix, it is immaterial that he located the house through oral instructions from Archuleta, rather than personally viewing the map. (Plaintiffs' Controverting and Separate Statement of Facts, Dkt. #47). The map showing just three street names presumably would not have provided context to the agent sufficient to direct him to the house. In any event, the Plaintiffs have not sufficiently demonstrated why the failure to include this information amounts to an intentional or reckless disregard for the truth, or how it would have been material to the Magistrate's probable cause finding.

The Plaintiffs further allege the warrant application was problematic because it stated that surveillance was conducted, implying that the surveillance led to further probable cause that had not actually materialized. Magistrates undoubtedly realize that law enforcement officers are motivated to make their case for probable cause as strong as possible. The conclusion that logically follows is that if surveillance had been conducted without mention of further probable cause, no further probable cause had developed. The fact that Paredes mentioned that the surveillance team observed "several cars" is neither factually inaccurate nor misleading. It describes the only thing noted during the surveillance, and does not state that the three cars observed were suspicious or unusual. The Court declines to find that the description of the surveillance constituted an intentional or reckless disregard for the truth.

Finally, the Plaintiffs point to inconsistencies in agent Paredes's description of their house. They note that the application for the search warrant indicated that the house located at 7342 W. Colter Street is "cream-colored, stucco, one-story with a gray shingle roof," and "has one large palm tree in the front yard that is approximately thirty (30) feet tall." The Plaintiffs state that, to the contrary, their house is actually white, not cream-colored, and has two palm trees, "neither of which is anywhere near thirty (30) feet tall." They do not, however, indicate how this discrepancy amounts to an intentional or reckless disregard for the truth. Furthermore, the Plaintiffs have attached Exhibit Color Photos to their Controverting and Separate Statement of Facts. (Dkt. #47-2). The photograph marked

"Exhibit Paredes 31" arguably fits the description Paredes included in the warrant application. From the photograph, it is not clear whether the house is cream-colored or white, and although two tree trunks are visible in the picture, it is not unbelievable that someone could mistake the two large, closely planted trees for one approximately thirty-foot palm. In any event, the Plaintiffs have not met their burden to void the Defendants' claim of qualified immunity.

The Plaintiffs cite two cases to support their claims that the Defendants acted with reckless disregard for the truth or falsity of the information contained in the warrant. Butler v. Elle, 281 F.3d 1014 (9th Cir. 2002); Liston v. County of Riverside, 120 F.3d 965 (9th Cir. 1997). Both are distinguishable from the factual situation here. In Butler, the plaintiff argued that the law enforcement officer had done an incomplete search to determine whether he and his business enterprise had paid required vehicle taxes. Butler, 281 F.3d at 1025. The officer had conducted a database search for vehicles titled in the plaintiff's name, but failed to search under the plaintiff's full name, or the correct name of his company. Id. The law enforcement officer's behavior was "compounded when he failed to inform the Magistrate of his incomplete search or of the possibility that the taxes had, in fact, been paid." Id. The Ninth Circuit noted that the officer possessed the correct information about the names at the time he submitted the affidavit for the search warrant. Id. That evidence belied his assertion that "he acted at all times in good faith based on what he knew when he signed the affidavit for the warrant." Id. at 1026.

In Liston, a sheriff's deputy sought a warrant to search an address believed to belong to a methamphetamine manufacturer and distributor. 120 F.3d at 969. The deputy had located the residence through utility records linking the suspect to the address. Id. In his application for the warrant, however, the deputy failed to include the information that the house had a "For Sale/Sold" sign when he conducted surveillance. Id. According to the Ninth Circuit, mentioning the presence of the sign "would put a reasonable magistrate on notice that a change in occupancy would be occurring in the near future, if it had not already occurred, and that special consideration must be given both to the timeliness of the evidence

- 10 -

supporting the warrant application and the timeliness of the execution of the warrant itself." Id. at 974. According to the court, not including this information in the warrant application was material to the magistrate's finding of probable cause. Id.

Unlike in Butler and Liston, the Defendant here did not omit facts that would materially alter the Magistrate's probable cause determination. Nothing in the record "belies the assertion" that agent Paredes acted in "good faith based on what he knew when he signed the affidavit for the warrant." Butler, 281 F.3d at 1026. There is likewise nothing to suggest that Paredes ignored obvious information — such as the For Sale/Sold sign in Liston — that, if included in the application for the warrant, would have "put a reasonable magistrate on notice" that probable cause might be lacking. 120 F.3d at 974. The totality of the circumstances, when viewed practically and nontechnically, leads the Court to conclude that there existed a substantial basis for a finding of probable cause. Illinois v. Gates, 432 U.S. 213, 230-31 (1983).

2.    Excessive Force

The parties agree that summary judgment is appropriate as to the excessive force claim against agent Paredes. (Plaintiffs' Response, Dkt. #46).

**B. Defendant Archuleta's Motion for Summary Judgment**

1. Judicial Deception

Agent Archuleta is also entitled to summary judgment on qualified immunity grounds. The Plaintiffs failed to establish either incompetence or a knowing violation of their rights by the conduct of agent Paredes. Having found that Paredes is entitled to qualified immunity, agent Archuleta can not be liable on the basis that he "was responsible for the oversight of agent Paredes's actions." (Plaintiffs' Response, Dkt. #46).

2. Excessive Force

Count II of the Plaintiffs' Complaint alleges that the execution of the warrant "constituted an unreasonable an excessive use of force in violation of their substantive due process rights under the Fifth Amendment to the United States Constitution." (Dkt. #1). Defendant Archuleta argues that a general allegation of a violation of one's *due process*

- 11 -

*rights* in the context of an unreasonable search does not state an actionable claim. (Motion for Summary Judgment, Dkt. #42). Quoting an unpublished opinion from this District, the Defendant asserts that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Id. (citing Howell v. Polk, No. 04-CV-2280-PHX-FJM, 2006 WL 463192, at *3 (D. Ariz. Feb. 24, 2006) (citing Albright v. Oliver, 510 U.S. 266, 273 (1994))).

The Plaintiffs present basically two arguments that the reasoning in Howell — and accordingly Albright — should not apply: (1) In Skover v. Titchenell, 408 F. Supp. 2d 445, 448 (E.D. Mich. 2005), the court merged an improperly labeled substantive due process claim with a claim correctly brought under the Fourth Amendment rather than dismissing it; and (2) the paragraph in their complaint that reincorporated the allegations of the previous paragraphs "as if re-alleged" served to correct their error. The Court disagrees.

In Skover, a couple whose house had been searched brought several claims against police officers involved in the raid. Id. The claims relevant here are Count II (improper search) and Count IV (due process), both of which claimed that the plaintiffs' house had been damaged as a result of an unlawful search. "Originally, the Plaintiff's [sic] listed the damage as a violation of the Fourth Amendment in Count II, and the Fifth and Fourteenth Amendment Due Process clauses in Count IV." Id. at 452. Because the plaintiffs "failed to present any authority that a due process claim was proper," the court merged the two counts into one count for unreasonable search and seizure under the Fourth Amendment. Id.

The Court believes that Skover is distinguishable from the situation here. The plaintiffs in Skover alleged that the *same conduct* was actionable under two different constitutional protections. Merging the claims into one count under the Fourth Amendment, therefore, had the same practical effect as dismissing the claim brought under substantive due process; the actionable conduct would be analyzed using the appropriate Fourth Amendment standard. The Plaintiffs here have made a completely different error: they have alleged that

- 12 -

*distinct acts* were actionable under *separate* constitutional amendments. They assert that judicial deception in procuring the warrant violated the Fourth Amendment, but that the execution of the warrant violated the Fifth Amendment. Unfortunately for the Plaintiffs, Skover is inapposite.

Similarly, the Court is not persuaded that the Plaintiffs' boilerplate language reincorporating the allegations of their previous paragraphs is sufficient to correct the error. Such a rule would render meaningless the requirement to state separately "[e]ach claim founded upon a separate transaction or occurrence." Fed. R. Civ. P. 10(b). Although the reincorporation by reference may have been sufficient to re-allege the previous facts and allegations, the Court does not find that the reincorporation sufficiently asserted that agent Archuleta's conduct during the search violated the Plaintiffs' Fourth Amendment rights.

Although the Court holds that summary judgment is appropriate as to the Plaintiffs' Fifth Amendment due process claim, it is **without prejudice** as to the ability of the Plaintiffs to amend their complaint to assert their cause of action against Defendant Archuleta under the correct constitutional amendment. The Court will separately set a status conference with the parties to further address proceedings consistent with this opinion.

Accordingly,

**IT IS ORDERED** that summary judgment be granted in favor of the Defendants on all claims against them, except that summary judgment is granted **without prejudice** as to the rights of the Plaintiffs to pursue a Fourth Amendment excessive force claim against Defendant Archuleta. (Dkt. #42).

**IT IS FURTHER ORDERED** that the parties appear at a status hearing on May 12, 2008, at 4:30 pm.

DATED this 27th day of March, 2008.

_____
Mary H. Murguia
United States District Judge